UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $158,000 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by John R. Lausch, Jr., United States Attorney for the

Northern District of Illinois, for its verified complaint against the above-named defendant funds

alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as

follows:

**Nature of the Action**

1.      This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture

of funds in the amount of $158,000.

2.      This complaint is verified by the attached affidavit of Task Force Officer ("TFO")

Eddy Sobkowiak of the Drug Enforcement Administration ("DEA"), which is fully incorporated

herein.

**Jurisdiction and Venue**

3.      This Court has jurisdiction over an action commenced by the United States as the

plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under

28 U.S.C. § 1355(a).

4.      This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5.      Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found within the Northern District of Illinois.

6.      The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were funds used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq.*

### Factual Allegations

7.      On October 10, 2017, DEA agents assigned to the DEA Transportation Interdiction Group ("DEA Group") at Amtrak Union Station in Chicago, Illinois, were alerted to the suspicious travel itinerary of Kevin Anthony Curtis ("Curtis").

8.      Specifically, Curtis purchased a one-way ticket, for travel from New York City, New York to Emeryville, California, via Chicago, Illinois, for approximately $999, and paid for the ticket with a credit card within 24 hours of the train's scheduled departure.

9.      Based upon the training and experience of the affiant, illegal drug couriers often purchase tickets a day or so prior to the scheduled departure. Additionally, based upon the affiant's training and experience, California, and in particular Emeryville, is a known source region for illegal drug trafficking. Finally, based upon the affiant's training and experience, those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep illegal drugs and/or

proceeds on their person or accompanying bags or suitcases.    Based upon the above information, agents sought to conduct a consensual interview of Curtis while he was at Amtrak Union Station.

10.    At approximately 3:20 p.m., on the same day, Special Agent Kevin Frankel, accompanied by TFOs Eddy Sobkowiak and Arnold Martinez, proceeded to Union Station's train number 5, car number 540, for the purpose of conducting an interview of Curtis.    At the time, the agents were dressed in civilian clothing with no weapons, radios, or other police equipment displayed.

11.    SA Frankel and TFOs Sobkowiak and Martinez approached an individual, later confirmed to be Curtis, identified themselves verbally, and displayed their credentials and badges to him.    TFO Sobkowiak explained to Curtis that he was not under arrest, was not in any kind of trouble, and did not have to speak any further with the agents.    Curtis stated he understood and agreed to talk to the agents.

12.    Initially, TFO Sobkowiak requested to see Curtis' boarding pass and a form of photo identification.    Curtis produced a boarding pass bearing his name and a Connecticut driver's license bearing his name and photo likeness.    TFO Sobkowiak noted the information and immediately returned the items to Curtis.

13.    When asked by TFO Sobkowiak where he was traveling, Curtis stated he was traveling to Emeryville, California, to visit his girlfriend.    When TFO Sobkowiak asked Curtis if he had any luggage other than the black Dockers carry-on roller suitcase and black backpack, Curtis responded "no."    TFO Sobkowiak then asked Curtis if he had packed his own luggage, knew all the items in his luggage, and if all the contents on his person and luggage were his.    Curtis responded "yes" to these questions.    TFO Sobkowiak also asked Curtis if anyone had given him

3

anything to put in his luggage or on his person to take to California for them. Curtis answered "no."

14. When TFO Sobkowiak asked Curtis if he was carrying any electronic devices, any weapons of any kind, or any illegal drugs in his luggage or on his person, Curtis stated that he had a cellular phone, but did not have any illegal drugs or weapons in his luggage or on his person. When TFO Sobkowiak asked Curtis if he had any large amounts of currency, money orders or cashier's checks in his luggage or on his person, Curtis started to get visibly upset and stated he did not understand why he was being interviewed.

15. TFO Sobkowiak advised Curtis he did not have to continue speaking to the officers if he did not want to. Curtis stated he did not mind speaking with the officers and would continue to do so, but he still did not understand the purpose of the interview.

16. When TFO Sobkowiak again asked Curtis if he was carrying any large amounts of currency, Curtis refused to answer. At the time, the agents observed Curtis become visibly nervous, sweating with a visible pulse in his neck, and was avoiding eye contact with them. Again, when TFO Sobkowiak asked Curtis if he was traveling with any large amounts of currency in his possession, Curtis refused to answer.

17. At the time, TFO Sobkowiak asked Curtis if he would consent to a search of his luggage to confirm that he did not possess any of the items discussed. At this time, Curtis became very agitated and stated he would not consent to a search of his luggage. Curtis stated "he knew his rights and knew that agents couldn't look in his luggage."

18. TFO Sobkowiak then advised Curtis he did not have to let agents look in his luggage and he was free to leave but told Curtis that a canine was requested to conduct an illegal drug odor investigation on the luggage.

19.     At approximately 3:30 p.m., Amtrak Police Department Officer Robert Crowley and his drug detector canine "Gander" arrived to conduct an illegal drug odor investigation on the luggage Curtis had in his possession, as well as several other pieces of luggage on car number 540. Gander gave a positive alert for the presence of an illegal drug odor on the black Dockers roller suitcase and black backpack that Curtis had in his possession.

20.     At the time, Curtis stated he did not believe that Gander had given a positive alert and that Officer Crowley had given secret signals to the canine to make the canine alert positively to Curtis' luggage.

21.     TFO Sobkowiak then advised Curtis that the roller suitcase and black backpack were going to be detained to obtain a judicial search warrant for the roller suitcase and backpack. TFO Sobkowiak asked Curtis if he would like to accompany the agents to the DEA office at Union Station to receive obtain a receipt for the luggage.   Curtis stated he did not want to get off the train and asked the agents to mail him the receipt.   Curtis remained on the train and departed from Chicago Union Station.

22.     Later in the evening of October, 10, 2017, TFO Martinez was advised by Amtrak personnel that Curtis had exited his California bound train in Naperville, Illinois and retuned to Union Station.   TFO Martinez was further advised that Curtis had gone to the Amtrak Police Office inquiring about obtaining a receipt for his property.

23.     On October 11, 2017, a State of Illinois search warrant was obtained for Curtis' Dockers roller suitcase and black backpack.   At approximately 11:45 a.m., on the same day, TFO Sobkowiak and other DEA agents executed the search warrant on the luggage.

24.     During the search, DEA agents recovered two large vacuum sealed bags from the Docker's roller suitcase.   Both of the vacuum sealed bags were triple bagged, and sealed with

layers of dryer sheets in order to avoid canine detection. Each bag contained numerous rubber banded bundles of cash. *See* Exhibits A-D.

25. Amtrak Police Department Officer Robert Crowley and his drug detector canine "Gander" arrived on the scene to conduct another illegal drug odor investigation on the currency after it had been separated from the luggage. Gander gave a positive alert for the presence of an illegal drug odor emitting from the cash.

26. Drug detector canine Gander was last certified before this investigation on January 13, 2017. Gander is trained in the detection of the odor of cocaine, heroin, ecstasy methamphetamine, and cannabis. Within the past six months, Gander has been used in approximately 30 investigations with a success rate of more than 90 percent.

27. TFOs Sobkowiak and Martinez and SA Frankel returned to Chicago United Station where Curtis was waiting to speak with them. When Curtis stated he wanted a receipt for his luggage, TFO Martinez advised Curtis that he would give him a receipt for the luggage. TFO Martinez further advised Curtis that the agents had just executed a search warrant on the luggage and seized a large amount of currency from the Dockers roller suitcase.

28. When TFO Martinez asked Curtis if he would like to discuss the source of the cash, he stated he did not want to discuss it and only wanted his receipt. TFO Martinez then asked Curtis if he was employed, Curtis again stated he did not want to speak to him.

29. In total, $158,000 in United States currency was recovered from Curtis' suitcase in the following denominations: 475 one hundred dollar bills, 510 fifty dollar bills, 3,732 twenty dollar bills, 797 ten dollar bills and 478 five dollar bills.

**Conclusion**

30.     For the reasons stated herein and in the attached affidavit, funds in the amount of

$158,000: (i) were furnished and intended to be furnished in exchange for a controlled substance;

and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were used or

intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq.*,

and therefore are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America requests:

a.     the funds be proceeded against for forfeiture and condemnation;

b.     due notice be given to all interested parties to appear and show cause why the

forfeiture should not be decreed;

c.     this Court adjudge and decree that the defendant funds be forfeited to the United

States and disposed of according to law; and

d.     any trial be before a jury.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:/s/ Daniel E. May
    DANIEL E. MAY
    Assistant United States Attorney
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    312-353-8694
    daniel.may@usdoj.gov

NORTHERN DISTRIT OF ILLINOIS ........... )
........................................................ ) ....... SS
COUNTY OF COOK ................................ )

## AFFIDAVIT

I, Eddy Sobkowiak, having first been duly sworn, upon oath, depose and state as follows:

1.      I am a Task Force Officer with the Drug Enforcement Administration and have been so assigned for approximately 19 years. I am also a Sergeant with the McCook, Illinois Police Department and have been employed there for 25 years. My duties and responsibilities as a Task Force Officer with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

2.      I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other agents, persons and documents, and it does not include each and every fact known to me concerning this investigation but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 16 of February, 2018, in Chicago, Illinois.

EDDY SOBKOWIAK
Task Force Officer
Drug Enforcement Administration



GOVERNMENT
EXHIBIT
A



GOVERNMENT
EXHIBIT
B



GOVERNMENT
EXHIBIT
C

